```
 1  DRINKER BIDDLE & REATH LLP
 2  Sheldon Eisenberg (SBN 100626)
    sheldon.eisenberg@dbr.com
 3  Ryan S. Fife (SBN 235000)
 4  ryan.fife@dbr.com
    1800 Century Park East, Suite 1400
 5  Los Angeles, California 90067
 6  Telephone:  (310) 203-4000
    Facsimile:   (310) 229-1285
 7
 8  Attorneys for Defendant
    West Publishing Corporation
 9
10
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| HOPKINS & CARLEY, ALC,<br><br>Plaintiff,<br><br>v.<br><br>THOMSON ELITE, A DIVISION OF WEST PUBLISHING CORPORATION and DOES 1 through 25,<br><br>Defendants. | Case No. 10-05806 LHK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MELINA ROSENBERG**<br><br>Date:      February 3, 2011<br>Time:      1:30 p.m. |
|---|---|

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 3, 2011 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the above-entitled Court located at 280 South First Street, San Jose, California, 95113, Defendant West Publishing Corporation will and hereby does request that the Court grant its motion to compel Plaintiff to submit to arbitration all claims for relief asserted in its Complaint against West and to dismiss this action.

Relief is sought based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Melina Rosenberg, the concurrently-filed Proposed Order, and all pleadings, records, and files in this action, other documents that may be filed, and such other argument and evidence as may be presented at any hearing on this matter.

Respectfully submitted,

Date: December 28, 2010

**DRINKER BIDDLE & REATH LLP**
Sheldon Eisenberg
Ryan S. Fife

By: _/s/ Sheldon Eisenberg_
Sheldon Eisenberg
Attorneys for Defendant
West Publishing Corporation

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Hopkins & Carley ("H&C") acquired law firm accounting software from the Thomson Elite division of defendant West Publishing Corporation ("West") pursuant to a comprehensive and negotiated written agreement. That agreement contains a straightforward provision requiring that "any dispute arising under the Agreement" be submitted to arbitration. H&C simply ignored the arbitration provision when it initiated this action in Santa Clara County Superior Court regarding its purported grievances with West's software. West timely removed the action on December 21, 2010, and now respectfully requests that this Court order H&C to arbitrate this matter in Los Angeles in accordance with the parties' agreement.

## II. STATEMENT OF FACTS

### A. The Underlying Agreement and Agreement to Arbitrate.

Hopkins & Carley ("H&C") is a full service law firm with nearly 60 attorneys in San Jose and Palo Alto. H&C, entered into a Customer Agreement (the "Agreement") with West on June 8, 2006. Exhibit A to the Declaration of Melina Rosenberg ("Rosenberg Decl."). Under the terms of the Agreement, H&C obtained a license to use West's then existing Enterprise software products for law office financial and practice management. Agreement, par. 4.2.1 (Ex. A, p. 15). The Agreement was the subject of negotiation and H&C obtained changes to West's typical form of license. Rosenberg Decl. ¶ 3. The parties executed an Amendment to the Customer Agreement effective as of September 28, 2006 which called for the replacement of the Enterprise product with West's newly released Elite 3E product ("3E"). Rosenberg Decl. ¶ 4. The Amendment specifically confirms and ratifies the original terms and conditions of the Agreement. Rosenberg Decl., Exhibit B, p. 50 ("All terms and conditions of the Agreement shall remain in effect unless specifically modified by this Amendment.").

The Agreement's dispute resolution provisions require arbitration of all disputes in Los Angeles in accordance with AAA rules. Paragraph 10.6.2. of the Agreement expressly provides:

> "The parties shall submit any dispute arising under the Agreement that the parties cannot resolve…to binding arbitration in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association. Any arbitration shall take place in Los Angeles before one arbitrator…."

Ex. A, p. 19.

### B.     The Dispute

H&C began production use of ("went live" with) the 3E software on January 1, 2008. Rosenberg Decl. ¶ 6. However, according to H&C, it experienced a number of problems and stopped using 3E sometime in early 2009 when it reverted to using its previous business and accounting software. Id. On January 22, 2009, over one year after the start of contractually defined "Live Operation," H&C sent a letter to West summarily terminating the Agreement. Rosenberg Decl., Exhibit C, p. 60. H&C alleged various breaches of the Agreement by West in that letter and asserted a claim for reimbursement of all amounts paid and consequential damages. Id., p. 63. West offered to provide H&C with an updated release of 3E to address its concerns, but H&C elected not to proceed with 3E and declined to install the updated releases that were then available. Rosenberg Decl. ¶ 9.

### C.     Notwithstanding The Arbitration Clause, H&C Initiated This Action.

Over a year and one half after purporting to terminate the Agreement, H&C filed its Complaint in the Santa Clara County Superior Court on September 28, 2010.[1] The gravamen of the Complaint is that West allegedly committed fraud and

---

[1] The Complaint was not served until November 29, 2010.

1   breached the Agreement because the 3E software supposedly did not perform as
2   represented or required under the Agreement. Specifically, H&C alleges that West
3   "was never able to make the product function" in accordance with the terms of the
4   contract and that the 3E product was "unusable, and ultimately unfixable."
5   Complaint ¶ 14-15. H&C also alleges fraudulent inducement, fraudulent
6   performance and negligent misrepresentation based on alleged misrepresentations
7   West made about its "ability to fulfill its obligations" under the Agreement and the
8   software's ability to "perform as required" by the Agreement. Complaint ¶¶ 22, 31
9   and 40.

West removed this action from the Santa Clara Superior Court and now respectfully requests that this Court compel H&C to arbitrate its dispute with West and dismiss this action.

### III. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE.

#### A. H&C's Claims Are Subject to Arbitration.

Both California and federal law incorporate liberal policies favoring arbitration and arbitration agreements, including the presumption of arbitrability. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (FAA establishes "liberal policy favoring arbitration agreements"); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 971-972 (1997).

In this case, the parties chose to have their Agreement "construed and enforced in accordance with the substantive laws of the State of California." Agreement, Paragraph 10.5 (Ex. A, p. 19). Thus, the limited preemptive aspects of the FAA do not apply. *Volt Information Sciences, Inc. v. Board of Trustees of*

*Leland Stanford Junior Univ.*, 489 U.S. 468, 470 (1989); *EFund Capital Partners v. Pless*, 150 Cal.App.4th 1311, 1319 (2007).[2]

To compel arbitration under either California law or the FAA, the moving party need only show that a written agreement to arbitrate the claims at issue exists. *See* California Code of Civil Procedure § 1281.2 ("the court shall order [arbitration] if it determines that an agreement to arbitrate the controversy exists."); 9 U.S.C. § 4; *Mitsubishi Motors Corp.*, 473 U.S. at 626 (the "task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."); *Howard Elec. & Mech. V. Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985) (the district court can determine only whether a written arbitration agreement exists and if it does, enforce it in accordance with its terms.). Once this showing is made, the court "shall make an order directing the parties to proceed with the arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Moreover, where the contract contains an arbitration clause, there is a presumption of arbitrability. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). Accordingly, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.; United Transportation Union v. Southern Cal. Rapid Transit Dist.*, 7 Cal.App.4th 804, 808 (1992). And where there is any doubt, it "should be resolved in favor of coverage." *AT&T Technologies, Inc.*, 475 U.S. at 650; *United Transportation Union*, 7 Cal.App.4th at 808.

H&C's claims for relief all fall within the scope of the arbitration clause contained in the Agreement. Plaintiff has asserted claims against West for: (1)

---

[2] The FAA preempts state law only to foreclose attempts by states "to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008).

1  fraudulent performance of the contract; (2) fraudulent inducement of the contract;
2  (3) negligent misrepresentation; (4) breach of contract; (5) breach of warranty and
3  (6) rescission.  Regardless of how they are styled, each and every claim for relief
4  alleged in the Complaint arises under the Agreement because it relates to the
5  interpretation and performance of the Agreement or because it has its roots in the
6  relationship established by the parties' agreement.  Indeed, but for the parties'
7  execution of the Agreement, none of H&C's claims would have arisen at all.  In
8  essence, each claim, whether based in contract or tort, is premised on the allegation
9  that the software West provided did not perform in accordance with the terms of the
10 Agreement.  For example:

- H&C alleges that West "was never able to make the product function" in accordance with the terms of the contract.  Complaint ¶ 14.
- H&C's fraudulent performance of contract, fraudulent inducement of contract and negligent misrepresentation claims each expressly allege that West misrepresented its "ability to fulfill its obligations" under the Agreement and the software's ability to "perform as required" by the Agreement.  Complaint ¶¶ 22, 31 and 40.

18      As a result, none of H&C's claims can be resolved without reference to the
19 Agreement because the conduct complained of must be compared to its provisions
20 to determine whether the software and West's conduct conformed to those terms.
21 Because that evaluation necessarily relates to the interpretation and performance of
22 the Agreement, H&C's claims fall within the scope of the arbitration clause.
23      In addition, the Agreement itself is central to West's defense of H&C's
24 claims, including the tort claims.  As a threshold matter, the Agreement contains an
25 integration clause.  *See* Paragraph 10.9 of Exhibit A at p. 20 ("Agreement, and the
26 Addenda hereto, contain the entire agreement" between [West and H&C] regarding
27 the subject matter hereof…").  Moreover, West's warranties with respect to the
28 software are specifically limited to the exclusive warranties set forth in Paragraph 6

of the Agreement and any alleged extracontractual oral or written statements are expressly disclaimed. Ex. A, p. 17. Thus, West will assert as a defense to H&C's claims that any alleged misrepresentations could not give rise to a claim for relief as a matter of law. As such, H&C's claims, however denominated, necessarily relate to the interpretation and performance of the Agreement and certainly have their roots in the relationship created by that Agreement.

West will also assert as a defense the one year contractual limitations period set forth in Paragraph 10.1 of the Agreement: "No action, regardless of form, arising out of the transactions contemplated herein may be brought by either party more than one (1) year after the cause of action has accrued." Ex. A, p. 19. In this case, H&C sent West a letter dated January 22, 2009 claiming that it was "in default of its obligations" and further claiming that the "product has never worked as promised and is simply no longer serviceable in any capacity." Rosenberg Decl., Exhibit C. There can thus be no dispute that H&C had knowledge of the facts giving rise to its claims, regardless of their form, by no later than January 22, 2009—the date of H&C's letter. Yet, H&C did not file its lawsuit against West until September 28, 2010, over nine months beyond the agreed to one year limitations period.

In light of these and other relevant contractual provisions, the outcome of each of H&C's claims will necessarily turn on the interpretation and application of the Agreement's terms. Moreover, if H&C and West had not entered into the Agreement, the present dispute would never have arisen. Accordingly, H&C's claims all fall well within the substantive scope of the Agreement's arbitration clause. *EFund Capital Partners v. Pless*, 150 Cal.App.4th 1311, 1326 (2007) (fraudulent inducement and negligent misrepresentation claims are properly characterized as "any" dispute arising out of underlying agreement).

### B. H&C's Fraud Claims Do Not Excuse It From Its Obligation To Arbitrate.

It is well established that H&C's fraud claims do not excuse it from its obligation to arbitrate. Alleging fraud or even "fraudulent inducement of contract" does not vitiate enforceability of the arbitration clause under California or federal law. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967); *Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal.4th 394, 419 (1996). In *Prima Paint*, the plaintiff filed suit to rescind the contract on the ground that the defendant had fraudulently represented that it was solvent and able to perform its contractual obligations. The Supreme Court concluded that the claim was arbitrable notwithstanding the allegation of fraud. In doing so, the Court expressly held that:

> "if the claim is fraud in the inducement of the arbitration clause itself- an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."

*Prima Paint*, 388 U.S. 403-404. The California Supreme Court has also held that "claims that the contract as a whole was obtained through fraud in the inducement are, in the absence of evidence of the parties' contrary intent, arbitrable under *Prima Paint*. *Rosenthal*, 14 Cal.4th at 419. *Rosenthal* provides that this rule includes "claims of a 'grand scheme' of fraud, or fraud 'permeating' the transaction." *Id.*[3]

None of H&C's claims allege any type of fraud with respect to the arbitration clause itself. Moreover, no such allegation would be plausible, much less possible,

---

[3] The Ninth Circuit has similarly enforced the rule that allegations of fraud are arbitrable. *Three Valleys Mun. Water District v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136 (9th Cir. 1991) (federal court may consider a defense of fraud in the inducement of a contract only if the fraud relates specifically to the arbitration clause itself and not to the contract generally citing *Prima Paint* with approval).

from a sophisticated law firm with close to 60 attorneys which, through negotiation, obtained substantial changes to West's typical form of Customer Agreement. Rosenberg Decl. ¶ 3  In the absence of any fraud specifically with respect to the inducement of the arbitration provision itself, it is the established province of the arbitrator to determine the validity of H&C's various fraud claims.

## IV. <u>CONCLUSION</u>

H&C should not be permitted to circumvent the clear arbitration clause contained in the Agreement.  As a substantial, full service law firm, H&C is as sophisticated a contracting party as exists and must be held to its decision to assent to the arbitration clause when it chose to license software from West.  For all the foregoing reasons, West respectfully requests the Court enter an order compelling H&C to arbitrate its dispute in accordance with the terms of the Agreement and dismissing this action.[4]

Date:  December 28, 2010

DRINKER BIDDLE & REATH LLP
Sheldon Eisenberg
Ryan S. Fife

By: /s/ Sheldon Eisenberg
      Sheldon Eisenberg
Attorneys for Defendant
West Publishing Corporation

---

[4] Because all of H&C's claims are subject to arbitration, this case is appropriately dismissed. *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988); *Bormann v. Waxie Enterprises, Inc.*, 2009 WL 6325693, *5 (D. Az. 2009).

# DECLARATION OF MELINA ROSENBERG

I, Melina Rosenberg, hereby declare as follows:

1.  I am the Contracts Manager of the Thomson Elite division of West Publishing Corporation ("West"). I am the custodian of West's files and records relating to Hopkins & Carley ("H&C"). I therefore have personal knowledge of the following facts and, if called as witness, could and would testify competently thereto.

2.  H&C is a law firm with offices in San Jose and Palo Alto. H&C entered into a Customer Agreement (the "Agreement") with West on June 8, 2006. Attached as Exhibit A to this Declaration is a true and correct copy of the Agreement executed by both H&C and West.

3.  The Agreement shows on its face that it was the subject of negotiation. In this particular situation, the parties executed a redlined version of the Agreement showing changes that were made to the original form of West's standard Customer Agreement that was used in 2006. As a result, the portions of the Agreement that are underlined or shaded represent modifications to West's typical form.

4.  The parties executed an Amendment to the Customer Agreement effective as of September 28, 2006 which called for the replacement of the Enterprise product with West's newly released Elite 3E product ("3E"). A true and correct copy of the Amendment is attached to my declaration as Exhibit B. The Amendment specifically confirms and ratifies the original terms and conditions of the Agreement.

5.  The Agreement's dispute resolution provisions are contained in Paragraph 10.6. For the convenience of the Court, Paragraph 10.6.2. provides:

> "The parties shall submit any dispute arising under the Agreement that the parties cannot resolve…to binding arbitration in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association. Any arbitration shall take place in Los Angeles before one arbitrator…."

LA01/ 406778.1                                      11                    MOTION TO COMPEL ARBITRATION AND
                                                                                                   DISMISS ACTION
                                                                                              Case No. 10-05806 LHK

6. H&C sent a letter to West dated January 22, 2009 which states that it is terminating the Agreement (the "January 22, 2009 Letter"). A true and correct copy of that January 22, 2009 Letter is attached to my declaration as Exhibit C. According to the January 22, 2009 Letter, H&C began production use of (went "live" with) the 3E software on January 1, 2008. However, according to the January 22, 2009 Letter, H&C experienced a number of problems and stopped using 3E sometime in early 2009 when it reverted to using its previous business and accounting software.

7. The Agreement defines "Live Operation" in Paragraph 1 as "the first date when Customer commences production use of any of the Thomson Elite Software." Therefore, H&C sent the January 22, 2009 Letter over a year after Live Operation began.

8. In the January 22, 2009 Letter, H&C alleged various breaches of the Agreement by West at that time and asserted a claim for reimbursement of all amounts paid and consequential damages.

9. On December 28, 2009, H&C sent a letter to Kim Massana the Chief Executive Officer of Thomson Elite. A true and correct copy of the December 28, 2009 Letter is attached to this Declaration as Exhibit D. In that Letter, H&C notes that West had offered to provide H&C with an updated release of 3E to address its concerns at no further charge to H&C, but that H&C elected not to proceed with 3E and declined to install the updated releases that were then available.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 27, 2010 at Los Angeles, California.

*Melina Rosenberg*
Melina Rosenberg

**PROOF OF SERVICE**

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1800 Century Park East, Suite 1400, Los Angeles, California 90067-1517. On December 28, 2010, I served a copy of the document(s) entitled:

> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MELINA ROSENBERG; [PROPOSED] ORDER**

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

☒ by electronically filing this document through the Court's CM/ECF systems whereby all parties who are registered with the Court's CM/ECF System receive a copy by electronic mail.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 28, 2010, at Los Angeles, California.

_____
Mary T. Avila

LA01/ 406778.1

MOTION TO COMPEL ARBITRATION AND DISMISS ACTION
Case No. 10-05806 LHK