UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOPKINS & CARLEY, ALC,<br><br>                     Plaintiff,<br>         v.<br><br>THOMSON ELITE, A DIVISION OF<br>WEST PUBLISHING CORPORATION,<br>and DOES 1 through 25,<br><br>                     Defendants. | Case No.: 10-CV-05806-LHK<br><br>ORDER GRANTING MOTION TO<br>COMPEL ARBITRATION |

Defendant Thomson Elite moves to compel arbitration and dismiss this action. The Court heard oral argument on March 31, 2011. Having considered the arguments and submissions of the parties, the Court GRANTS Defendant's motion to compel arbitration. By April 21, 2011, the parties shall file a stipulation dismissing the action without prejudice and providing for tolling of the statute of limitations.

**I.     Background**

This action arises out of a contractual agreement between Plaintiff Hopkins & Carley, ALC ("Plaintiff" or "H&C") and Defendant Thomson Elite ("Defendant" or "Thomson"). H&C is a California Law Corporation located in San Jose, California. Compl. ¶ 1. Thomson is a software development and consulting firm incorporated under the laws of Minnesota, with its principal place of business in Minnesota. Compl. ¶ 5; Notice of Removal ¶ 7. In 2005, H&C began exploring

1

1    options to replace its existing accounting and law practice management software. Compl. ¶ 6.
2    After meeting with Thomson and participating in an interactive product demonstration, H&C
3    agreed to purchase Thomson's Elite financial and practice management system, with certain
4    specified customizations. Compl. ¶¶ 7-8. On June 8, 2006, the parties entered into a Customer
5    Agreement for the Elite software and associated services.[1] Decl. of Melina Rosenberg
6    ("Rosenberg Decl.") ¶ 2-3 & Ex. A, attached to Def.'s Mot. to Compel Arbitration, ECF No. 9.
7    H&C claims that while it was still in the process of implementing the Elite software, Thomson
8    approached H&C and encouraged it to switch to Thomson's new 3E software product. Compl. ¶ 9.
9    Thomson allegedly told H&C that the new 3E product was far superior and that H&C could switch
10   to the new product at no additional cost. *Id.* Based on Thomson's representations, H&C agreed to
11   switch from the older Elite product to the newer 3E product. Compl. ¶ 10. On September 28,
12   2006, the parties executed an Amendment to the Customer Agreement (the "Amendment") that
13   replaced the Software and Fee Schedule to substitute the 3E software and added certain other
14   provisions. Rosenberg Decl. Ex. B. H&C also agreed to purchase Thomson's Client Relationship
15   Management ("CRM") product, which Thomson claimed was easily integrated with the 3E
16   product. Compl. ¶ 11.

17   H&C claims that it spent considerable time and resources implementing that 3E product
18   and eventually switched its entire accounting function to the new 3E platform. Compl. ¶ 12. After
19   3E was operational, however, H&C began to note various problems with its operations. Compl.
20   ¶ 13. H&C claims that at first Thomson represented that these problems were minor bugs that
21   could easily be fixed. Compl. ¶ 14. Despite these early assurances, however, H&C claims that
22   Thomson was never able to make the 3E product function and that the minor "bugs" were in fact
23   serious structural problems that made the product unusable and unfixable. *Id.* Although Thomson
24   allegedly represented that the 3E product was complete and available when H&C agreed to
25   purchase it, H&C believes that the product was actually still in development and was essentially a

---

[1] Thomson submitted a copy of the Customer Agreement and subsequent Amendment to the Customer Agreement as an exhibit to the motion to compel arbitration. As H&C has not objected to this submission and cites to it in its opposition brief, it appears that the documents submitted by Thomson are true and correct copies of the parties' agreement that may be considered by the Court in ruling on the motion to compel arbitration.

2
Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

prototype that had never before been sold or successfully implemented. Compl. ¶ 15. H&C therefore believes that Thomson negligently and intentionally misrepresented the status and availability of the 3E product in order to induce H&C to purchase it. Compl. ¶¶ 15-17. H&C claims that Thomson compounded the consequences of its actions by taking the 3E system live even though it knew the system was not ready. Compl. ¶ 17. H&C also claims that the CRM product was not even in production when H&C agreed to purchase it and believes, contrary to Thomson's representations, that the CRM cannot be seamlessly integrated with the 3E system. Compl. ¶ 20.

On September 28, 2010, H&C filed suit in the Superior Court of the County of Santa Clara, seeking over $1 million in damages. Thomson was served on November 29, 2010, and removed the action to federal court on December 21, 2010, on the basis of diversity jurisdiction. H&C's Complaint asserts six causes of action: (1) fraudulent performance of contract; (2) fraudulent inducement of contract; (3) negligent misrepresentation; (4) breach of contract; (5) breach of express and implied warranty; and (6) rescission. Thomson now argues that each of these claims is encompassed by the arbitration clause contained in the original Customer Agreement and retained by the Amendment. Thomson thus moves to compel arbitration and dismiss the action.

## II.     Legal Standard

The Federal Arbitration Act mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract." 9 U.S.C. § 2. In deciding whether a dispute is arbitrable, a court must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *Chiron Corporation v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; *Chiron*, 207 F.3d at 1130. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any

3

1   dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications*

2   *Workers of America*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf*

3   *Navigation Co.*, 363 U.S. 574, 582 (1960)).

4       The FAA creates a body of federal substantive law of arbitrability that requires a healthy

5   regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt*

6   *Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S.

7   468, 475-479 (1989); *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 936-37 (9th Cir. 2001).

8   State law is not entirely displaced from the federal arbitration analysis, however. *Ticknor*, 265

9   F.3d at 936-37. When deciding whether the parties agreed to arbitrate a certain matter, courts

10  generally apply ordinary state-law principles of contract interpretation. *First Options of Chicago,*

11  *Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Parties may also contract to arbitrate according to state

12  rules, so long as those rules do not offend the federal policy favoring arbitration. *Volt*, 489 U.S. at

13  478-79. Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies

14  "general state-law principles of contract interpretation, while giving due regard to the federal

15  policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of

16  arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting

17  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other

18  contract, the parties' intentions control, but those intentions are generously construed as to issues of

19  arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626

20  (1985). If a contract contains an arbitration clause, there is a presumption of arbitrability, *AT & T*,

21  475 U.S. at 650, and "any doubts concerning the scope of arbitrable issues should be resolved in

22  favor of arbitration." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139

23  (9th Cir. 1991).

24  **III.   Discussion**

25      Defendant moves to compel arbitration based upon the arbitration clause contained in

26  § 10.6.2 of the parties' original Customer Agreement. The arbitration clause reads in full:

27      The parties shall submit **any dispute arising under the Agreement** that the
    parties cannot resolve by the procedure set forth in Section 10.6.1 to binding
28      arbitration in accordance with the then prevailing Commercial Arbitration Rules

4

Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

>of the American Arbitration Association.  Any arbitration shall take place in Los Angeles before one arbitrator who shall be experienced in the subject matter of the dispute.  The arbitrator shall have no authority to award punitive damages or to treble or otherwise multiply actual damages.  Judgment upon any award made in such an arbitration may be entered and enforced in any court of competent jurisdiction.

Rosenberg Decl. Ex. A § 10.6.2 (emphasis added).  The parties do not dispute that the arbitration clause was incorporated into the Amendment to the Customer Agreement that replaced the Elite Enterprise Software, for which Plaintiff originally contracted, with the Elite 3E Software that is the subject of this dispute.  *See* Rosenberg Decl. Ex. B at 1 ("All terms and conditions of the Agreement shall remain in effect unless specifically modified by this Amendment.").  H&C, however, opposes arbitration on two grounds.  First, H&C argues that the arbitration clause is narrow in scope and does not cover the claims raised in this lawsuit.  Second, H&C claims that the agreement to arbitrate was fraudulently induced and is therefore unenforceable.  The Court will consider each of these arguments in turn.

### A. Scope of the Arbitration Agreement

H&C's primary argument in opposition to the motion to compel is that the dispute presented in this action is not subject to the arbitration agreement.  Relying on the Ninth Circuit's decision in *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983), H&C argues that the "arising under" language used by the parties creates a relatively narrow arbitration clause that encompasses only disputes related to the interpretation of the contract and matters of performance.  H&C contends that the claims in this case are not limited to matters of contract interpretation or performance because they turn on allegations that Thomson employed a "bait and switch" tactic that constituted fraud.  While H&C concedes that it agreed to arbitrate disputes "arising out of the product and services Thomson agreed to provide," H&C claims that "Thomson never delivered that product."  Opp'n to Mot. to Compel Arbitration and Dismiss Action 6, ECF No. 12.  As H&C describes it, "H&C agreed to purchase an orange, and agreed to arbitrate claims '[arising] from' defects with the orange.  Thomson delivered an apple." *Id.*  In essence, H&C argues that it never agreed to arbitrate claims arising from defects with the "apple" that Thomson actually delivered, and therefore none of its claims fall within the scope of the arbitration clause.

5

Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

Plaintiff is correct that where a contract mandates arbitration of disputes "arising under" or "arising out of" an agreement, without more, the Ninth Circuit has construed the scope of the agreement to arbitrate relatively narrowly. *See Tracer Research Corp. v. National Environmental Services Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994); *Mediterranean Enterprises*, 708 F.2d at 1464. In *Mediterranean Enterprises*, the Ninth Circuit considered a clause that required arbitration of "[a]ny disputes arising hereunder," which the court considered synonymous with "arising under the Agreement." 708 F.2d 1461, 1464. Relying on case law from the Second Circuit, the Ninth Circuit found that the phrase "arising under" is "relatively narrow as arbitration clauses go." *Id.* at 1464 (quoting *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F. Supp. 359, 364 (S.D.N.Y. 1966)). The court found the omission of broader language, such as "relating to," to be significant and agreed with the Second Circuit that the language "arising under" restricts arbitration to disputes related to the interpretation and performance of the contract. *Mediterranean Enterprises*, 708 F.2d at 1464 (citing *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961)). Based on this analysis, the Ninth Circuit found that the district court had properly referred the plaintiff's breach of contract and breach of fiduciary duty claims to arbitration, and properly refused to compel arbitration of the plaintiff's claims for quantum meruit, conversion, and conspiracy to induce breach of an entirely separate contract. *Id.* The Ninth Circuit reaffirmed this analysis in *Tracer*, where it considered a clause that covered disputes "arising out of" an agreement, but omitted reference to claims "relating to" an agreement. 42 F.3d at 1295. After determining that such language "is of the same limited scope as the 'arising under' language in *Mediterranean Enterprises*," the court held that the plaintiff's claim for misappropriation of trade secrets was not arbitrable. *Id.*

Thomson makes two arguments in response to H&C's reliance on *Mediterranean Enterprises*. First, Thomson argues that *Mediterranean Enterprises* is inapplicable to the present dispute because the parties chose to have the Customer Agreement governed by California law. *See* Rosenberg Decl. Ex A § 10.5 ("This Agreement shall be construed and enforced in accordance with the substantive laws of the State of California."). Thomson notes that a recent California Court of Appeal decision, relied upon heavily by H&C in its opposition, explicitly considered and

6
Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

rejected the *Mediterranean Enterprises* rule. *See EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1329-30, 59 Cal. Rptr. 3d 340 (Cal. Ct. App. 2007). In *EFund Capital Partners*, the California Court of Appeal considered a clause that required arbitration of "[a]ny dispute or disagreement arising from or out of" the contract. 150 Cal. App. 4th at 1317. Relying on *Tracer* and *Mediterranean Enterprises*, the trial court had narrowly construed the arbitration clause and denied the defendants' motion to compel arbitration of plaintiff's claims, which included tort claims for fraudulent inducement and negligent misrepresentation. *Id.* at 1317, 1319. After providing a lengthy analysis of both California and federal appellate decisions, the California Court of Appeal reversed the trial court and declined to follow the Ninth Circuit rule.[2] *Id.* at 1329. The court found the Ninth Circuit rule to be "a distinctly minority rule" that "no longer finds support in other federal courts,"[3] and appeared to consider the Ninth Circuit's analysis inconsistent with the California and federal policies requiring liberal construction of arbitration clauses. *Id.* at 1328-30. The California court thus concluded that "[u]nder California law, we cannot give arbitration clauses the 'relatively narrow' construction described in *Mediterranean Enterprises*." *Id.* at 1330. Thomson argues that because California law governs interpretation of the Customer Agreement, this Court should follow *EFund Capital Partners* and decline to give the arbitration clause the relatively narrow construction that Ninth Circuit case law may require.

---

[2] As Plaintiff points out, the Court of Appeal first distinguished the case from *Mediterranean Enterprises* and *Tracer*, finding the language in the arbitration clause "materially broader" than that considered by the Ninth Circuit. *EFund Capital Partners*, 150 Cal. App. 4th at 1328. However, the court then went on to reject the Ninth Circuit rule entirely, noting that "[i]n any event, the foregoing Ninth Circuit analysis no longer finds support in other federal courts," and finding the Ninth Circuit rule inconsistent with both California law and the federal policy requiring liberal construction of arbitration clauses. *Id.* at 1328-30.

[3] The *Mediterranean Enterprises* court relied heavily upon the Second Circuit's analysis in *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961). The Second Circuit has since "recognize[d] . . . that *Kinoshita* is inconsistent with the federal policy favoring arbitration" and has limited *Kinoshita* to "its precise facts." *Genesco, Inc. v. T. Kakiuchi & Co.*, Ltd., 815 F.2d 840, 854 & n.6 (2d Cir. 1987). For the same reasons, a number of courts have declined to follow *Kinoshita* and the Ninth Circuit's decision in *Mediterranean Enterprises*. *See, e.g., Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("we decline to follow the Ninth Circuit, which apparently continues to approve the teaching of *Kinoshita*"); *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 385-86 (11th Cir. 1996) (rejecting *Kinoshita* and noting that "[o]nly the Ninth Circuit seems to have followed the decision in *Kinoshita*").

7

Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

At the motion hearing, both parties agreed that California law governs interpretation of the arbitration agreement.[4] Although H&C claimed at the hearing that California law distinguishes between broad and narrow arbitration clauses, and that California courts would construe this clause narrowly, H&C has provided no case law to support this contention. Rather, under *EFund Capital Partners* and other California cases, it appears that the parties agreement to arbitrate "*any* dispute arising under the Agreement," Rosenberg Decl. Ex. A § 10.6.2 (emphasis added), is broad enough to encompass tort claims that relate to the parties' contractual relationship, including claims of fraud in the inducement. *See, e.g.*, *EFund Capital Partners*, 150 Cal. App. 4th at 1330, 1317 (agreement to arbitrate any dispute arising from or out of a contract encompasses tort claims, including fraud in the inducement and negligent misrepresentation); *id.* at 1329 (noting that other circuits have broadly construed "arising under" language in arbitration provisions); *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 684, 99 Cal. Rptr. 2d 809 (Cal. Ct. App. 2000) (characterizing contractual language requiring arbitration of "*any* problem or dispute" arising under or concerning the terms of the agreement as "very broad"). As Thomson points out, H&C has identified no meaningful distinction in California case law between the "arising under" language in the parties' agreement and the "arising from or out of" language broadly construed by the California Court of Appeal. Indeed, throughout its opposition brief, H&C uses such language interchangeably. *See* Opp'n at 6 ("the parties agreed to arbitrate disputes *arising out of* the product and services Thomson agreed to provide") (emphasis added); *id.* ("H&C . . . agreed to arbitrate claims 'arriving [sic] *from*' defects . . .") (emphasis added). Thus, the Court agrees that California law requires a relatively broad interpretation of the arbitration clause in this case, to encompass at least those tort claims that relate to the parties' contractual relationship.

---

[4] At the hearing, Plaintiff conceded that California law governed interpretation of the arbitration clause, but then suggested that *Mediterranean Enterprise* would nonetheless govern because federal law preempts state law under the FAA. However, the FAA preempts state law only to the extent that it stands as an obstacle to the enforcement of arbitration agreements according to their terms. *See Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477-78 (1989). Here, California law appears to be more favorable to the federal policy favoring arbitration than Ninth Circuit law, and therefore there are no grounds for federal preemption of California principles of contract interpretation.

8

Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

1   Because each of H&C's claims, whether based on contract or tort, directly relates to the parties'
2   contractual relationship, they are subject to arbitration under California law.

3   Moreover, Thomson argues, and the Court agrees, that even if *Mediterranean Enterprises*
4   applies, and the arbitration clause is relatively narrowly construed, H&C's claims are still subject
5   to arbitration.  The Complaint presents claims for fraudulent performance of contract, fraudulent
6   inducement of contract, negligent misrepresentation, breach of contract, breach of express and
7   implied warranty, and rescission.   It is clear, as an initial matter, that H&C's claims of breach of
8   contract, fraudulent performance, and breach of warranty[5] directly involve matters of contract
9   interpretation and performance and are therefore arbitrable under *Mediterranean Enterprises* and
10  *Tracer*.  *See Mediterranean Enterprises*, 708 F.2d at 1464 (finding that claims for breach of
11  contract and breach of the fiduciary duty created by the contract "clearly fall within the scope of
12  the arbitration clause").  H&C's contention that it agreed to arbitrate claims arising from defects
13  with an orange, but Thomson delivered an apple, does not change this analysis.  If it did, then any
14  claim that a party provided goods materially different from those promised would not be subject to
15  arbitration.  Such an outcome would be inconsistent with the federal policy favoring arbitration and
16  the Supreme Court's instruction that the parties' intentions be "generously construed as to issues of
17  arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626
18  (1985).

19  H&C's claims for fraudulent inducement, negligent misrepresentation, and rescission
20  present a somewhat closer question.  Nonetheless, the Court finds that these claims, particularly as
21  articulated in H&C's Complaint, are intimately related to the contract and its performance in a way
22  that distinguishes them from the kinds of claims that Ninth Circuit has found not to be arbitrable.
23  The analysis in *Tracer* is instructive.  There, the defendant had obtained certain information from
24  the plaintiff under the terms of a licensing agreement.  *Tracer*, 42 F.3d at 1293.  After the licensing
25  agreement was terminated, the defendant continued to use this information, and the plaintiff sued
26  for misappropriation of trade secrets.  *Id.* at 1293-94.  In determining that plaintiff's

---

[5] Section 6 of the Customer Agreement provides limited express warranties and also includes a disclaimer of any other warranties, express or implied.  Rosenberg Decl. Ex A §§ 6.1-6.4.

9

Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

1   misappropriation claim was not subject to arbitration, the Ninth Circuit noted that the issue

2   presented in the case was not whether the licensing agreement gave the defendant the right to use

3   plaintiff's trade secrets (which defendant had not argued), but whether the plaintiff possessed any

4   protectable trade secrets. *Id.* at 1295. The court acknowledged that "the tort claim would not have

5   arisen 'but for' the parties' licensing agreement," but found that this limited causal relationship was

6   not determinative. *Id.* Rather, unlike other claims found to be arbitrable, the trade secrets claim

7   did not require reference to the underlying agreement or interpretation of the parties' contractual

8   relationship. *Id.* Indeed, the claim, if proven, "would constitute an independent wrong from any

9   breach of the licensing and nondisclosure agreements" and would not affect any contractual

10  remedies. *Id.* Simply put, the trade secrets claim did not depend on, and did not affect, the actual

11  agreement between the parties or their performance of that agreement.

12      *Tracer* and *Mediterranean Enterprises* suggest that "arising under" or "arising out of"

13  language covers claims that require reference to the underlying contract, interpretation of the

14  parties' agreement, or examination of performance under the contract, but not claims for wrongs

15  that are only indirectly related to the parties' contractual relationship. Neither case suggests that

16  tort claims are categorically excluded from "arising under" clauses, and neither case addresses

17  claims of fraud in the inducement, negligent misrepresentation during formation and performance,

18  or rescission. Looking to the specific facts pled in H&C's Complaint, the Court finds that the

19  allegations supporting these claims require examination of Thomson's performance under the

20  contract and reference to the promises made through the parties' contractual agreement. For

21  instance, H&C's claims for fraudulent inducement and negligent misrepresentation are premised in

22  part on claims that Thomson misrepresented and concealed its "ability and intention to fulfill its

23  obligations to H&C" and continued to misrepresent its ability to implement and fix the 3E product

24  throughout its performance of the agreement. Compl. ¶¶ 31, 40. Similarly, H&C's claim for

25  rescission is premised on claims that Thomson misrepresented its ability to perform and provide

26  services to implement the 3E and CRM products, Compl. ¶ 58, and that "H&C did not intend or

27  agree to receive the products and services actually delivered." Compl. ¶ 63. These claims thus

28  require interpretation of the obligations Thomson owed H&C under the contract, the services

Thomson agreed to perform under the contract, and the product and services H&C contracted to receive. They also require examination of Thomson's conduct in performing its obligations under the contract. Unlike the trade secret claim in *Tracer*, which could have been brought without regard to any breach of the contractual agreement, here all of H&C's claims are inextricably bound up with questions of contract interpretation, performance, and breach.

The Court does not believe that the Ninth Circuit intended district courts to construe "arising under" clauses so narrowly as to preclude arbitration of claims so closely related to the contract itself and the parties' performance thereunder.[6] *See Owner-Operator Independent Drivers Assoc., Inc. v. Swift Transportation Co.*, 288 F. Supp. 2d 1033, 1036-37 (D. Ariz. 2003) (finding that clause requiring arbitration of "[a]ny disagreement or litigation arising under this Contract" encompassed federal statutory claims); *Battaglia v. McKendry*, 233 F.3d 720, 729 (3d Cir. 2000) (finding that "arising under" language encompasses claims going to contract formation). Resolving any ambiguity in favor of arbitration, as required, the Court thus finds that all of H&C's claims fall within the scope of the arbitration clause, regardless of whether Ninth Circuit or California law is applied.

### B. Enforceability of the Arbitration Agreement

H&C also argues that even if the arbitration clause covers its claims, Thomson's motion to compel arbitration should be denied because the arbitration clause was fraudulently induced and is therefore unenforceable. The Supreme Court has recognized that a party opposing arbitration may raise two types of validity challenges: (1) a challenge specifically to the validity of the agreement to arbitrate, and (2) a challenge to the validity of the contract as a whole, such as a claim that the agreement was fraudulently induced. *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2778 (2010); *see also Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 419, 58 Cal. Rptr. 2d 875 (1996) (distinguishing between "fraud in inducing consent specifically to the arbitration agreement" and "claims that the contract as a whole was obtained through fraud in the

---

[6] Indeed, in *Scherk v. Alberto-Culver Co.*, the Supreme Court found that fraudulent misrepresentation claims were arbitrable under a clause requiring arbitration of "any controversy or claim ... aris[ing] out of this agreement." 417 U.S. 506, 508-10, 519-20 (1974). The scope of the arbitration clause was not at issue before the Court in *Scherk*, however.

11

Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

inducement"). It is well-established that only the first type of challenge is relevant to the court's determination of arbitrability, and thus a claim of fraud in the inducement of the contract as a whole does not prevent a court from enforcing a specific agreement to arbitrate. *Rent-A-Center*, 130 S.Ct. at 2778. It is true that in some cases the fraud that induced the whole contract may have equally induced the specific agreement to arbitration. *Id.* In such cases, however, the Supreme Court has "nonetheless require[d] the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.*

In determining whether a challenge to validity or enforceability is directed specifically to the arbitration clause, courts looks to the "crux of the complaint." *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "[W]hen the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator. When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2 of the FAA." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1263-64 (9th Cir. 2006) (en banc) (citations omitted). In its opposition brief, H&C argues that the same fraud that induced it to enter into the Customer Agreement and Amendment also induced it to agree to arbitrate claims arising under the agreements. That is, if H&C had known that the 3E product was untested and unworkable, it would neither have entered into the contract as a whole, nor agreed to arbitrate claims based on the 3E software. The crux of H&C's Complaint, however, suggests that H&C's challenge is directed at the contract as a whole and not specifically to the arbitration agreement. The Complaint is focused on allegations that Thomson made misrepresentations that induced H&C to enter into an agreement to purchase the Elite software, to later switch from that software to the 3E product, and to make payments throughout a prolonged implementation process. Compl. ¶¶ 15, 17, 24, 32. The Complaint also alleges that if H&C had known the true facts, it would never have entered into the agreement to purchase Elite and then to switch to 3E. Compl. ¶ 33, 42, 63. Importantly, however, the Complaint does not allege that Thomson's misrepresentations induced H&C to agree to arbitrate claims, nor does it allege that if

12
Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

1   H&C had known the true facts, it would not have agreed to the arbitration clause.  Indeed, the

2   Court has found no mention of the agreement to arbitrate anywhere in the Complaint.  The

3   declaration submitted by H&C's Executive Director likewise does not mention the arbitration

4   agreement.  *See* Decl. of Arthur P. Bernstein in Supp. of Opp'n to Mot. to Compel Arbitration,

5   ECF No. 13.  It thus appears that H&C's claim of fraudulent inducement is directed solely to the

6   contract as a whole and not specifically to the agreement to arbitrate.  Accordingly, under well-

7   established Supreme Court precedent, H&C's fraud claims are subject to arbitration.[7]

### C.  Stay vs. Dismissal

Based on the above analysis, the Court finds that all of H&C's claims are subject to arbitration, and Thomson's motion to compel arbitration should be granted.  Where an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action.  *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *see also Dittenhafer v. Citigroup*, No. C 10-1779 PJH, 2010 WL 3063127, at *7 (N.D. Cal. Aug. 2, 2010) (compelling arbitration and dismissing case); *Underwriters Reinsurance Co. v. Ace American Ins. Co.*, No. CV0208177CASJTLX, 2003 WL 24011931, at *7-8 (C.D. Cal. Feb. 10, 2003) (same).  However, H&C asks the Court to stay, rather than dismiss, the case.  At the motion hearing, H&C expressed concern that it may face statute of limitations problems if the case is dismissed, and the arbitrator later determines that certain claims should be heard by the court.  Thomson indicated that it would be willing to address this concern by stipulating to a dismissal without prejudice that

---

[7] At the motion hearing, H&C argued for the first time that the contract between H&C and Thomson is "permeated" by fraud, and that under California law such a contract is void and non-arbitrable.  In *Rosenthal*, the California Supreme Court rejected the "permeation doctrine" referred to by H&C and held that claims that the contract as a whole was obtained through fraud are subject to arbitration, including "claims of a 'grand scheme' of fraud, or fraud 'permeating' the transaction."  *Rosenthal*, 14 Cal. 4th at 419.  H&C is correct that claims that a contract is *void* due to fraud in the execution or inception must be decided by the court.  *Id.*  However, fraud in the execution is limited to claims that "fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all."  *Id.* at 415 (quoting *Ford v. Shearson Lehman American Express, Inc.*, 180 Cal. App. 3d 1011, 1028, 225 Cal. Rptr. 895 (1986)).  H&C's complaint is squarely grounded in claims of fraud in the inducement, rather than fraud in the inception.  H&C clearly intended to enter into an agreement with Thomson and understood the nature of that agreement.  Thus, this is a case where "the promisor knows what he is signing but his consent is *induced* by fraud."  *Rosenthal*, 14 Cal. 4th at 419.  Under *Rosenthal*, such claims of fraud in the inducement are subject to arbitration, even if the entire transaction was permeated by fraud.

13
Case No.: 10-CV-05806-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

provides for tolling of the statute of limitations if the arbitrator determines that some or all of H&C's claims must be heard by the court.  The Court finds this solution preferable to a stay of unknown duration, but which H&C stated at the hearing may be multiple years.  Accordingly, the parties are ordered to file, no later than April 21, 2011, a stipulation dismissing the case and providing for tolling of the statute of limitations.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion to compel arbitration. The parties shall file, no later than April 21, 2011, a stipulation dismissing the case without prejudice and providing for tolling of the statute of limitations.

**IT IS SO ORDERED.**

Dated: April 6, 2011

_____
LUCY H. KOH
United States District Judge